IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA SCANDORA, ) | |
|     Plaintiff ) | |
| ) | 05 C 1206 |
| Vs. ) | |
| ) | Honorable Virginia Kendall |
| VILLAGE OF MELROSE PARK, ) | Presiding |
| And VITO SCAVO ) | |
|     Defendants ) | Honorable Sidney Schenkier |
| ) |   Magistrate Judge Presiding |

PLAINTIFFS RESPONSE TO DEFENDANTS MOTION TO
QUASH SUBPOENAS

Plaintiff Lisa Scandora, by and through her attorney SUSAN P.MALONE, in response to the motion of defendants VILLAGE OF MELROSE PARK and VITO SCAVO, to quash subpoenas in whole or in part, states as follows

Background

   Defendants appear to acknowledge that most of the documents requested in the subpoenas to third parties are relevant. Defendants contend as to the IFPC subpoena that only one paragraph is at issue. Defendants assert that the Cook County Sheriff subpoenas is irrelevant. Defendants ignore the prior testimony in this matter.

1. There were only four women hired or retained by Melrose Park as full time police officers, including plaintiff. At the deposition of one of the village witnesses, the identity of the fourth women, May Young was disclosed. Plaintiff, who had not earlier remembered this individual, recalled that Chief Scavo sent her to the Cook county training academy to report to him on whether this individual passed the

1

POWER or physical ability test. Chief Scavo denies that this occurred.(Scavo dep., pg 11-12).

2. As to one of the other Melrose Park candidates in the same class, Chief Scavo admitted intervening to give him a second chance at passing various portions of the curriculum.  Scavo contends there was an automatic retake provision for the physical so that he would not have to request the same courtesy be provided Ms. Young. (Scavo deposition, pg 32-35, Ex. A).

3. The subpoena to the cook County Sheriff academy seeks to discover any documents that might assist in confirming plaintiffs recollection of the events. We do not know whether the County has the responsive documents, but if those documents exist, they could assist in determining who was or was not present at this time and the dates of such administration. [1]

4. The subpoena to IFPC is similarly relevant. During the time period at issue, Melrose Park Police department had an order requiring any officer who wished to work secondary employment to provide an information and indemnity agreement from their employer. Chief Scavo has testified that he was a "representative" of IFPC and to the best of his recollection, this order was ignored as to that company. By some coincidence, during Chief Scavo's tenure, no officer worked for any competing firm in the village.  Chief Scavo testified that he owned a security consulting firm as well and that no other firm worked in the Village. (Scavo deposition, pg 5 )

5. During his deposition, Chief Scavo and his counsel repeatedly stated that the

---

[1] Judge Kendall had earlier ordered that the files of these four women from the Village and Board of Police and Fire commissioners ought be produced. To date, one of the personnel files from the Village has been

Chief was "honest" and stressed his integrity and truthfulness. (Chief Scavo deposition, pg 10-11). Chief Scavo also contended that he was happy that a woman was taking the test as he viewed the department as having too few women. The Chief and Village's past history in hiring female police officers and in retaining those officers is clearly relevant to this action. Plaintiff clearly does not want the Chief to mislead the jury into believing that he was supportive and encouraging to female officers in general or plaintiff in particular.

6. Chief Scavo also contended that the reason he assigned Scandora to the midnight shift was at her request so that she could work secondary employment. Scandora denies making any such request.

7. Melrose Park police officers worked secondary employment either directly with IFPC or for the chief's own company. The name provided by defendant Scavo for his company does not match any record of a licensed security contractor with the Illinois regulator. The requested records will shed light on who is working for whom during this time period and the relationship between the Chief and this company. Because many of the witnesses in this matter are likely to be persons who worked this secondary employment through this company, this information may be relevant to the bias and prejudice of these witnesses.

8. As the defendants acknowledge, most of the information subpoenaed is not in the least objectionable. Plaintiff issued these subpoenas only after the issues were raised during the Chief's deposition, portions of which are attached as Exhibit A

9. The sole conversation regarding these documents with defense counsel occurred at the deposition of the plaintiff on July 14, 2006, during which time counsel for

---

produced, but not the remaining files.

defendants attempted to question the plaintiff concerning this subpoena. At the conclusion of the deposition, defense counsel did not indicate any interest in seeking to resolve the question of these depositions or to discuss this matter.

Wherefore, Plaintiff Lisa Scandora, respectfully requests this Honorable Court to deny the motion of defendants to quash the subpoenas.

        Respectfully submitted

        _s/Susan P. Malone

        _____

        Susan P. Malone

Susan P.Malone
20 N Wacker Drive suite 1745
Chicago IL 60606
(312) 726-2638
(312) 726-2640
smalonelaw@sbcglobal.net

4