PJR/tab            Code No. 141            File No. 5574-24804

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LISA SCANDORA, )<br>         Plaintiff, )<br>          )<br>  vs. )<br>          )<br>VILLAGE OF MELROSE PARK, and )<br>VITO R. SCAVO, Individually, )<br>         Defendants. ) | 05 C 1206<br>Judge Kendall |

**VILLAGE OF MELROSE PARK'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT**

NOW COMES the Defendant, THE VILLAGE OF MELROSE PARK, by its attorneys, DOWD & DOWD, LTD., and in support of its motion for summary judgment, states as follows:

**I.     INTRODUCTION**

Plaintiff claims that this an "old fashioned form of sex discrimination" where a supervisor and decision maker take action against a female where they would not against a male probationary officer". . . Despite devoting 15 pages to her response, Scandora is incapable of producing evidence which shows that she was the victim of retaliation or was subjected to gender discrimination. Her inability to do so is underscored by her failure to respond to four separate requests to admit facts that were served during the course of this litigation (See Exhibits A, B, C and D attached hereto). At numerous points, Scandora claims that she is not obligated to prove anything at this stage of the proceedings. While technically correct, the fact remains that Scandora may not rest of her pleading but must respond to Defendant's motion by identifying some evidence, not a mere scintilla, that would enable a trier of fact to find in her favor. Given her failure to respond to Defendant's four

1

requests to admit, Scandora is unable to do so. As is established by Patrick J. Ruberry's affidavit, the fourth request to admit was served on February 2, 2006 but was never answered by Plaintiff's counsel. Plaintiff claims to have answered the second request to admit facts but does not support that assertion with a proof of service or other documentation indicating that the response was in fact served within 30 days of the date of service. Additionally, even if the court should disregard those admissions, Scandora still fails to meet her burden.

## II. SCANDORA IS INCAPABLE OF PROCEEDING UNDER THE DIRECT METHOD OF PROOF.

### A. In view of Scandora's failure to answer the Village's request to admit facts, Scandora is incapable of establishing a prima facie case of gender discrimination or retaliation.

Plaintiff admits, albeit tacitly, that there is no direct evidence of discrimination, i.e. an admission on the part of the decision maker (See pp. 86-87 of Scandora's July 14, 2006 deposition testimony attached hereto as Exhibit E). Nevertheless, she claims that there is "circumstantial evidence which, if credited, would support a Plaintiff's verdict". The nature of this circumstantial evidence is not identified with any specificity. She initially refers to a "dispute as to whether DiMaio did or did not make a statement attributed to him" and "whether Scandora did or did not tell Scavo DiMaio was making such statements attributed to him by Scandora". Whether Scandora told Scavo about DiMaio's alleged sexist behavior is no longer in dispute. By failing to respond to Defendant's fourth request to admit facts, Plaintiff admits that she never complained to Scavo about gender discrimination.

Scandora claims that her counsel never received either the third or fourth requests to admit and further claims that she responded to the first and second request to admit facts. To date, the undersigned has yet to receive a response to the first request to admit (See affidavit of Patrick J. Ruberry attached hereto as Exhibit F). With respect to the second request to

admit, the so-called response was attached to Plaintiff's Rule 56.1(a) statement. The response is not dated or time-stamped and is not accompanied by a proof of service (unlike Defendants' requests to admit facts). Scandora's counsel claims that she served a response to the second request to admit facts but does not identify the manner in which service was made and the date on which the response was allegedly served.

She also claims that "DiMaio was not supposed to be acting as a shift or patrol supervisor between March and August of 2003; because of some unknown anger management problem'". This statement is not supported by either deposition testimony or an affidavit. Exactly what this assertion has to do with Scandora's gender discrimination claim is not explained. Similarly, Scandora cannot explain how these particular matters, if accepted as true, would permit a jury to infer that the Village discriminated against her because of her gender.

Scandora claims that there is "disputed evidence as to whether Scandora did or not violate any order" but admitted under oath that she was aware of no evidence which shows or suggests that Chief Scavo did not honestly believe that she had violated the general order in question (See paragraphs 36, 46, and 48 of Defendants' statement of facts). Actually, this issue has been removed from dispute by virtue of Plaintiff's failure to answer the Village's Second Request to Admit Facts. While Plaintiff may claim that "it is undisputed that never had possession of nor removed any files or tapes from the department", she mischaracterizes the reason for her termination. Scandora was terminated because she violated a general order which required her to submit such requests to the Chief, not fellow officers (Officer Rinella) or civilian employees (Arellano and Williams). Scandora was not written up, reprimanded or otherwise disciplined for asking questions but for violating general order number 02-002-

0011. She attempted to obtain copies of the materials in questions without first obtaining permission from the Chief and Scandora has admitted as much (See paragraphs 40, 41, 42 and 43 of Defendants' 56.1(a) statement). Additionally, Chief Scavo also expressed concerns about Plaintiff's truthfulness (See Exhibit G attached hereto).

Next, Scandora claims that there is "ample evidence" with respect to "the alleged violation of command and asking Corter whether he knew how to fix the computer jam". She follows this assertion with a number of statements which are neither material nor relevant to the issue of circumstantial evidence. Christopher Corter testified that she did in fact ask him to leave his post and assist her in booking a prisoner (See pp. 30-31 of Christopher Corter's deposition testimony attached hereto as Exhibit H). The incident was reported to the Village and a write-up was generated. She complains "there is no explanation why DiMaio framed the incident as seeking help with a male prisoner when he knew the entire incident involved trying to clear a computer jam". Once again, Scandora has elected to mischaracterize the write-up. She was written up because she asked a civilian dispatcher to leave his post, not because she was "trying to clear a computer jam".

The plaintiff also claims that she was pressured to return to work following her accident and her testimony is "supported by her contemporaneous conversations with her doctors and Ms. Saleme, the Village Clerk". Inasmuch as prior consistent statements constitute hearsay, the "support" is irrelevant and inadmissible. Is it the plaintiff's contention that she was pressured to return to work because she is a female? If so, this is a new theory of relief that is being raised for the first time in response to a summary judgment motion. Moreover, during her deposition, Plaintiff admitted that she did not object to returning to work on a light duty basis (See page 157 of Scandora's July 14, 2006 deposition testimony

4

attached hereto as Exhibit E). The courts of this circuit have held that summary judgment is hardly the time to raise new theories of relief or new causes of action (See authority). Additionally, Scandora has not identified any male probationary officers who were (1) injured in an on-duty accident; and (2) not pressured to return to work. As a result, whether or not Scandora was pressured to return to work is immaterial. As for the so-called "conflicting reasons for terminating Scandora", they exist in Scandora's imagination only. Obviously, repeated violations of a general order can properly be characterized as either insubordination or disrespect for a supervisor. The same can be said with respect to repeated violations of the chain of command.

Instead of presenting a "convincing mosaic", Scandora offers nothing but confusion and vagueness. While she claims that she "met with Scavo twice about the comments DiMaio was making", she does not identify the "comments DiMaio was making" or otherwise suggest that she complained to Scavo about gender discrimination and/or sexist behavior. Her failure or inability to do so is explainable inasmuch as Scandora failed to respond to Defendant's Fourth Request to Admit Facts and thus has admitted that she never uttered such complaints to Chief Scavo. As for Lieutenant Potamianos' alleged confirmation (told him that she was being harassed), Scandora has misrepresented his testimony. First, Scandora never told Lieutenant Potamianos that DiMaio was subjecting her to sexist comments or sexist behavior. She simply told the Lieutenant that DiMaio was harassing her bu did not disclose the nature of the harassment (See p. 49 of Potamianos' deposition testimony attached hereto as Exhibit I). Under no stretch of the imagination did she suggest that DiMaio was harassing her on the basis of her gender or was sexually harassing her[1].

---

[1] Plaintiff concedes that she is not bringing a sexual harassment claim. She does further violence to the record when she claims that "Scavo twice made comments about her sex and was dismissive when she talked to him

5

Scandora admits, albeit indirectly and reluctantly, that she failed to tell Chief Scavo about the alleged sexist behavior (See Plaintiff's response to paragraphs 10 and 11 of Defendants' statement of facts). As for comments Scavo allegedly made about "her sex", those comments are not identified (See p. 7 of Plaintiff's response). Thus, the Village is hardpressed to respond to that assertion.

Scandora then attempts to show that Chief Scavo treated male probationary officers differently. As expected, she mischaracterizes and misrepresents the reasons for her termination. Scandora was not disciplined for "asking questions of her peers". She was fired for repeatedly violating a general order. Her contention that a reasonable jury could conclude that "it is obviously more important that police officers refrain from using excessive force than from asking questions of their peers" is, to say the least, inaccurate and intellectually dishonest. She offers no authority or evidence to support this contention. The 7th Circuit has repeatedly held that conclusory statements not grounded in specific facts are not sufficient to avoid summary judgment. Lucas v. Chicago Transit Authority, 367 F.3d 714, 726 (7th Cir.2001); Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir.2001). Rule 56 requires a litigant to offer more than the bald assertion of the general truth of a particular matter and it requires affidavits and specific concrete facts establishing the existence of the truthful matter asserted. Drake v. Minnesota Mining & Manufacturing Company, 134 F.3d 878, 887 (7th Cir.1998). Given the absence of specific evidentiary support, this particular assertion must be disregarded. Additionally, she fails to offer evidence which suggests that the probationary officer, whom she never identifies, repeated the offense. What Scandora has not and cannot do is identify a male probationary officer who repeatedly violated general

---

about DiMaio" and then directs the court and the parties to her response to paragraphs 10 and 11 of Defendants' statement of facts.

order number 02-002-0011 and was not terminated. The fact that no male probationary officer has committed the same or similar offenses is irrelevant. Scandora presents no evidence which indicates that other male probationary officers did violate general order number 02-002-0011 and were not written up, reprimanded or disciplined.

With respect to the documents seized by federal law enforcement officials, Scandora's counsel was well aware that the documents in question were seized and she in fact obtained copies of those documents from the United States' Attorneys Office. Accordingly, Scandora's counsel is being disingenuous when she argues that "the Village has not provided any support for an outrageous assumption".

None of the "circumstantial evidence" identified above is germane to the issues of retaliation or discrimination. More important, Plaintiff cannot escape the effect of failure to respond to four separate requests to admit facts.

**B.      Plaintiff is unable to establish a prima facie case using the indirect method.**

i.      Scandora is unable to satisfy the second and fourth elements of the indirect method.

As the court knows, the key issue in any employment discrimination case is whether the employer would have taken the same action had the plaintiff been of a different race, age or sex, and everything else remained the same. Carson v. Bethlehem, 82 F.3d 157, 158 (7th Cir.1996). Scandora does not dispute this proposition.

Scandora cannot credibly claim that she was meeting the employer's legitimate expectations insofar as she received three write-ups, two of which involved a violation of a general order. Scandora responds by claiming that elements two and four should be collapsed into one element. To support this line of argument, Plaintiff relies on Thanongsinh v. Board of Education, 462 F.3d 762 (7th Cir.2006). The holding and facts in Thanongsinh

7

are easily distinguished from this case. First, the plaintiff in Thanongsinh alleged that he was demoted and the demotion was motivated by his race. Second, the Thanongsinh court, citing Vikhari v. Swedish Covenant Hospital, 190 F.3d 799, 807 (7th Cir.1999), observed that when the "standards for assessing qualifications are themselves allegedly discriminatory, whether the plaintiff was meeting her employer's 'legitimate performance expectations. . . dovetails with the issue of pretext' and requires the court to assume for the purpose of reaching the pretext inquiry that the plaintiff made out a prima facie case". No such allegations are made in this case. Scandora does not allege and has never alleged that the methods or procedures used for assessing the qualifications of a probationary officers were themselves "allegedly discriminatory". As such, this is not an instance in which "the two questions collapse into one". More important, by failing to answer Defendant's request to admit, Plaintiff admits that she did in fact violate general order number 02-002-0011 on three separate occasions (See Exhibit B attached hereto).

     Having admitted to these rules' violations, Scandora cannot hardly claim that she was meeting the Village's legitimate expectations. Scandora can produce no evidence which shows that the "expectations" were manufactured to justify termination. She herself has admitted that she has no evidence or information which indicates that Chief Scavo did not believe that she had violated the general orders (See paragraphs 46, 48 of Defendants' 56.1(a) statement).

ii.     Scandora is unable to offer evidence which would permit a trier of fact to find a similarly situated employee of a different gender who was treated more favorably.

     As the court knows, a "similarly situated employee" is someone directly comparable to Plaintiff in all material respects. Patterson v. Avery Dennison Corp., 281 F.3d 676, 680

(7th Cir.2002). In her response, Scandora was obligated to identify similarly situated employees who held the same job, reported to the same supervisor, were subject to the same standards, engaged in the same conduct, had similar qualifications and that there were "no differentiating or mitigating circumstances as would distinguish. . . the employer's treatment of [her]". Radue v. Kimberly Clark Corp, 219 F.3d 612, 617-18 (7th Cir.2000). Scandora fails to identify any other probationary officer known or understood by the Village and its supervisors to have violated a general order on separate occasions. Scandora, accordingly, cannot withstand summary judgment (See Lucas v. Chicago Transit Authority, 367 F.3d 714, 733 (7th Cir.2004)). With respect to the two other employees identified in her brief, Scandora must show that they engaged in the same conduct as she and that there are no "differentiating or mitigating circumstances as would distinguish the employer's treatment of [them]". Radue, 219 F.3d at 618. Starting on page 12, Scandora offers a series of conclusory statements which are not sufficient to avoid summary judgment (See Albiero v. City of Kankakee, 246 F.3d at 933 (7th Cir.2001)). She repeatedly mischaracterizes the Village's reasons for her termination by claiming "Plaintiff and only Plaintiff was charged with violating an order directed to the possession of tapes or files for asking how one could obtain access to these documents". Likewise, Scandora's extensive discourse concerning "the treatment of male officers" (at page 12) is long on conclusions and short on evidentiary support. Her claim that she was "pressured to return to work" is irrelevant and has nothing to do with the Village's decision to terminate her. The conduct which resulted in her termination, violating general order 02-002-0011, had absolutely nothing to do with her light duty status. Page 13 consists entirely of rhetorical, conclusory statements which again have no evidentiary foundation. Scandora goes so far as to argue, albeit it without citing any

9

evidence, that "if Scandora was not terminated before she transferred to another shift, there was no reason to believe that she would not complete her probationary term without incident" and "would have been returning to work under a different supervisor". This amounts to yet another self-serving conclusory statement that does not conform to either the spirit or letter of Rule 56. She concludes this section of her brief by claiming "at a minimum, the timing of the termination, shortly after complaints and with the plethora of different explanation raises questions of fact". Scandora offers no evidence which would suggest that "timing of the termination" was suspicious. With respect to her so-called protected activity, which Scandora herself has admitted did not occur, timing is anything but suspicious.

      The acts or omissions of which the plaintiff attributes to Officer Negron are in no way comparable to her misconduct. Scandora fails to identify any general order or other regulation that Negron allegedly violated. Scandora also fails to explain how being involved in two motor vehicle accidents is comparable to violating a general order which governs access to audiotapes, reports and other related documents. Moreover, Officer Negron was not accused of intentionally violating a department rule or regulation. This is clearly a "differentiating or mitigating circumstances as would distinguish" the alleged conduct. Radue, 219 F.3d at 617-18. Plaintiff fares no better with respect to her argument concerning an unidentified officer who was disciplined for excessive force. Unlike Scandora, the officer in question admitted his misconduct and was disciplined. The officer (whom Scandora does not identify) did commit three separate violations of the same general order during a one-week period. More important, Exhibit K, which Plaintiff has failed to authenticate, illustrates the lack of similarity between Scandora and the officer who was disciplined for excessive force. The exhibits in questions show that Sergeant DiMaio had no involvement in

10

disciplining this officer. With respect to the so-called excessive force, the five-day suspension was recommended by one Lieutenant R. Laino. With respect to the officer's failure to lock his squad doors, neither Chief Scavo nor Sergeant DiMaio had any involvement in that particular incident or any discipline that resulted therefrom. Finally, Plaintiff's claim must fail since she has failed to show that the "comparators" (whom she has chosen) engaged in the same conduct.

**B.     Scandora cannot prove that the Village's legitimate, non-discriminatory reasons for its disciplinary decision are pretextual.**

Scandora's discrimination claim is further deficient as a matter of law because, even if she succeeds in establishing a prima facie case, the Village articulated a legitimate, non-invidious reasons for its actions that she is incapable of showing to be pretextual.

The 7th Circuit case law defines pretext as "deceit used to cover one's tracks". Grube v. Lau Industries, Inc., 257 F.3d 723, 730. On the subject of pretext, Scandora cannot establish a material issue of fact by second-guessing the Village's decision or showing that Scavo's decision to terminate her was somehow mistaken or ill-advised. E.g., Bahl v. Royal Indemnity Company, 115 F.3d 1283, 1292 (7th Cir.1997). Scandora fails to show that the proffered reason for her termination was illegitimate. As a result, she must establish that the proffered reasons are pretextual. Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1006 (7th Cir.2002). An employee's "pure speculation" that an impermissible factor motivated an employer's actions is not evidence of pretext. Haywood v. Lucent Technologies, Inc., 323 F.3d 524, 532 (7th Cir.2003). See also Karazanos, 948 F.3d at 37-38 (an employee must do more than challenge the judgment of her superiors using his own self interest assertions).

Scandora offers only second-guessing, speculation and self-serving assertions. She also fails to identify any evidence which even remotely suggests that the reasons given for

11

her termination amounted to a deliberate falsehood (See Forrester, 53 F.3d at 419). On page 13 of her response, Scandora offers a series of rhetorical questions which are hardly a substitute for evidence and do not create an issue of fact on the subject of pretext. She closes that portion of her brief by offering a "rational explanation" which she likewise fails to support with any evidentiary materials. Her inability to do so is understandable inasmuch as she has admitted under oath that she can prove no evidence or information which suggests that Chief Scavo did not honestly believe that she had violated the general orders (See paragraphs 46, 48 of Defendants' 56.1(a) statement). She then argues that the "matter is clearly replete with conflicting testimony as to who said what to whom on various occasions". Even if the court were to accept this broad, sweeping assertion as true, whether Scandora actually did what Scavo honestly believed she did is immaterial. Similarly, whether the Village had good or bad reasons for the termination decision is also immaterial. Absent evidence that the village did not honestly believe legitimate reasons it proffered for the termination – there is an obvious absence of such evidence in this case – Scandora fails to meet her burden of proving pretext and her claim must fail as a matter of law (So long as the employer honestly believes those reasons, a pretext has not been shown". Jordan v. Summers, 205 F.3d 337, 343 (7th Cir.2000)).

### III. PLAINTIFF'S RETALIATION CLAIM FAILS AS A MATTER OF LAW.

### A. Plaintiff cannot produce evidence which shows that she engaged in protected activity.

In her memorandum, Scandora all but ignores her failure to answer Defendant's request to admit facts, including Defendant's fourth request to admit facts. By failing to respond to the requests, Plaintiff has admitted that she never told Chief Scavo about alleged sexist behavior perpetrated by Sergeant DiMaio. Yet even if the court should disregard this

12

obvious default, the fact remains that Scandora herself acknowledges that she never told Scavo about sexist remarks and behavior she attributes to Sergeant DiMaio. In paragraphs 4 and 5, Scandora states that she "tried to talk to Scavo about the comments of DiMaio". Neither the Village nor Chief Scavo are required to engage in mind-reading. Since Scandora has herself admitted that she did not engage in statutorily protected activity, she can hardly claim that Scandora retaliated against her (See Durkin v. City of Chicago, 341 F.3d 606, 614-15). Scandora apparently agrees that there is no direct evidence of retaliation inasmuch as she has not presented or identified any such evidence in her response and has apparently chosen not to contest that aspect of Defendant's claim.

**B.     Scandora is unable to establish a causal connection between any alleged protected activity and the adverse employment action.**

The courts of this circuit have repeatedly held that mere temporal proximity between the plaintiff's protected activity and the action alleged to have been taken in retaliation will rarely be sufficient in and of itself to create a triable issue. Stone v. City of Indianapolis, 281 F.3d 640, 644 (2002). In order to establish a causal connection between an employee's protected expression and an employer's adverse action by a mere temporal proximity, the employer's adverse action must follow fairly soon after the employee's protected conduct. Hoffman-Dombroski v. Arlington International Race Course, Inc., 254 F.3d 644, 654 (7th Cir.2001). Temporal proximity must be "very close". . . Clark County School District v. Breeden, 532 U.S. 268, 273-74 (2001). The 7th Circuit has held that a period of three to four months between an employer's knowledge of protected activity and adverse employment action is insufficient. Tomanovich v. City of Indianapolis, 457 F.3d 656, 665 (7th Cir.2006). Here, Plaintiff claims that she "tried to raise the issue of gender discrimination" in August or

13

September of 2003. It is undisputed that she was fired on December 23, 2003. As a result, to the extent that Plaintiff is relying on mere temporal proximity, her retaliation claim must fail.

## IV.     SCANDORA FAILS TO SHOW THAT ANY ALLEGED CONSTITUTIONAL DEPRIVATION WAS PERPETRATED BY A FINAL POLICYMAKER.

In order to hold the Village liable, Scandora must necessarily show that the alleged constitutional violation is attributable to a policy, custom or practice. Monell v. New York City Department of Social Services, 436 U.S. 687, 694 (1978). Monell and its progeny identify three methods that a plaintiff may use to establish municipal liability under Section 1983. Scandora does not claim that the alleged violation is attributable to an express municipal policy or a widespread practice constituting custom or usage. Instead, she maintains that the alleged constitutional injury was caused by a person with "final policymaking authority". Only those officials who have final policymaking authority may, by their actions, subject a municipality to liability under Section 1983. Dickson v. Burke County, 303 F.3d 1271, 1276 (11th Cir.2002). In order to have final policymaking authority for purposes of municipal liability, an official must possess responsibility for making law or setting policy, that is, authority to adopt rules for the conduct of government. Killinger v. Johnson, 395 F.3d 765 (7th Cir.2004). Whether an official is a final policymaker is a matter of state law and is to be decided by the court. Ebersole v. Steele, 59 F.3d 710, 715 (7th Cir.1995); Horwitz v. Board of Education, 260 F.3d 602, 619 (7th Cir.2001). An official's authority to hire, fire demote and otherwise manage the people who work in his department is distinct from the authority to make policy for a local government unit. Venters v. City of Delphi, 123 F.3d 956, 966 (7th Cir.1997). Here, Scandora does not offer any evidence which, if accepted as true, would permit this court to find that Chief Scavo was a "final policymaker" for purposes of Section 1983. She has instead offered hearsay, innuendo and

14

inadmissible conclusions. Instead of offering evidence, the plaintiff can only offer rhetoric. She states "for all practical purposes, in Melrose Park, Chief Scavo was the end of the line for decisions in policy". This assertion, like most of the assertions contained in Plaintiff's papers, is unsupported by admissible evidence. The same can be said of Plaintiff's contention that "[Scavo] knew that if he fired Scandora, no Village authority could or would question or review his actions" amounts to nothing more than self-serving hyperbole. Scandora cannot survive summary judgment by merely characterizing Scavo as a "final policymaker ". While Plaintiff may complain that it is difficult to "sandwich all the testimony and materials which will be presented at trial", she fails to realize that this is the "put up or shut up" moment of this lawsuit. She also fails to offer testimony or evidence which would allow the matter of municipal liability to be submitted to the trier of fact.

### V.     CONCLUSION.

For the reasons stated above, the Village respectfully requests that this court enter summary judgment in its favor and against the plaintiff.


                                    DOWD & DOWD, LTD.

                            By:     /s/ Patrick J. Ruberry_____
                                    Attorney for Defendant,
                                    VILLAGE OF MELROSE PARK

## **CERTIFICATE OF SERVICE**

I, an attorney, state Defendant Village of Melrose Park's Reply in Support of Its Motion for Summary Judgment was served electronically to all law firms of record via ECF on May 11, 2007.

By: /s/ Patrick J. Ruberry _____
Attorney for Defendant,
VILLAGE OF MELROSE PARK

Patrick J. Ruberry
Dowd & Dowd, Ltd.
617 W. Fulton Street
Chicago, IL 60661
Tx: 312/704-4400
Fx: 312/704-4500