PJR/tab          Code No. 141          File No. 5574-24804

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LISA SCANDORA, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 05 C 1206 |
| ) | Judge Kendall |
| VILLAGE OF MELROSE PARK, and ) | |
| VITO R. SCAVO, Individually, ) | |
| Defendants. ) | |

**DEFENDANT VITO SCAVO'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

NOW COMES the defendant, VITO SCAVO, by his attorneys, DOWD & DOWD, LTD., and in support of his motion for summary judgment, states as follows:

**I.      INTRODUCTION**

In this discrimination/retaliation case, Scandora contends that Chief Scavo discriminated against her because she is a female and in so doing violated the Fourteenth Amendment's Equal Protection Clause. Chief Scavo is entitled to summary judgment inasmuch as the plaintiff has failed to offer evidence which would show that he is not entitled to protections afforded by qualified immunity. Similarly, the court should award summary judgment to him inasmuch as the plaintiff has failed to show that he discriminated against her and did so intentionally. Finally, Scandora's claim must fail because she has admitted that Chief Scavo was not aware of any allege protected activity.

**II.     BY FAILING TO FULLY RESPOND TO SCAVO'S ARGUMENTS ON QUALIFIED IMMUNITY, PLAINTIFF HAS WAIVED HER OPPOSITION AND THUS SCAVO IS ENTITLED TO SUMMARY JUDGMENT.**

While Scandora devotes several paragraphs of her response to showing that the right to be free from discrimination was well established, she did not address the issue of

1

whether Scavo's conduct violated any clearly established legal norms (See Green v. Carlson, 826 F.2d 647, 652 (7th Cir.1987). A defendant is entitled to qualified immunity if his conduct did not, as a matter of law, violate any clearly established legal norms. If there are disputed issues of fact upon which the question of immunity turns, or if it is clear that the defendant's conduct did violate clearly established norms, the case must proceed to trial. Id. On numerous occasions, the courts of this circuit have held that a party's failure to respond to arguments raised in a summary judgment results in waiver. Arendt v. Vetta Sports, Inc., 99 F.3d 231, 237 (7th Cir.1996); Woods v. Clay, 2000 WL 43293 (N.D.Ill.2005). Simply put, summary judgment is the "put up or shut up moment" in a lawsuit when a party must show what evidence it has that would convince a trier of fact to accept its version of events. Koszola v. Board of Education of the City of Chicago, 385 F.3d 1104 (7th Cir.2004); Johnson v. Cambridge Industries, Inc., 325 F.3d 392, 401 (7th Cir.2003). The ultimate burden of proof lies with Scandora to show that Scavo was not entitled to the protections afforded by qualified immunity. Scott v. Clay County, 205 F.3d 867, 873, n.9 (6th Cir.).

Scandora has seen fit to conflate the two-step analysis and simply argues that she need only show that the right to be free from discrimination was well established. However, the courts of this circuit and the Supreme Court have held otherwise. The issue of whether an official's actions were objectively reasonable is a question of law, not a question of fact (See Burlington Northern and Santa Fe v. White, 126 S.Ct.2405, 2417 (an objective standard is judicially administrable).

Here, Scandora accuses Scavo of terminating her because she complained about the sexist behavior perpetrated by one of her supervisors, Sergeant DiMaio. She also

claims that Scavo terminated her because of her gender and that the reasons given for her termination amounted to an untruth.  Even when viewed in the light most favorable to Scandora, the evidence submitted in connection with these summary judgment proceedings, including admissions made by Scandora, establishes that Scavo did not violate any clearly established legal norms.  By failing to respond to Defendant's fourth request to admit, Plaintiff admits that she never complained to Vito Scavo about alleged sexual harassment and/or gender discrimination (A copy of Defendant's Fourth Request to Admit Facts is attached hereto as Exhibit A).  While Plaintiff's counsel may claim that she never received the document, the fact remains that it was served via regular mail on February 2, 2006 (See request and certificate of service attached hereto as Exhibit A). Additionally, she has made no effort to rescind the admissions or otherwise request leave to file a late response.  Since Scandora has admitted that she did not engage in protected activity, she is in no position to allege or otherwise show that the termination decision was based on invidious reasons.

More important, Scandora herself has admitted that she did not engage in protected activity.  In paragraph 4 of her statement of additional facts, the plaintiff states that she "tried to speak to Scavo about the comments DiMaio after getting authorization from Lieutenant to do so".  Scandora then directs the defendants and the court to paragraphs 17 through 20 of her affidavit. Scandora acknowledges that she did not engage in any protected activity.  She indicates that "wanted to speak to the Chief about these comments but apparently never did (See paragraphs 17-19 of the affidavit).  In paragraph 19, she only refers to "problems I was having with Sergeant DiMaio". Discussions about "problems" can hardly be treated as protected activity for purposes of

3

either Title VII or Section 1983. According to her affidavit, she only tried to talk about Scavo but for reasons known only to Scandora and her counsel, was unable to raise the issue or otherwise engage in what could be construed as "protected activity". In paragraph 30 of the affidavit, she "I tried to tell Chief Scavo the comments were continuing in nature". Strangely, Scandora does not identify the nature of the comments that were "continuous in nature" and Defendants and the court are left to guess. Even when viewed in the light most favorable to Scandora, the allegations contained in her affidavit and statement of additional facts show that Scavo did not have notice of any conduct that would qualify as protected activity. As a result, his decision to terminate Scandora did not violate any clearly established legal norms. Nothing under Title or Section 1983 obligates the decision maker to read an employee's mind so as to prevent gender discrimination. Scandora singularly fails to address this aspect of qualified immunity and as such, has waived her opposition. Moreoever, Scandora cannot escape the effect of her failure to answer the second and fourth requests to admit as well as her own testimony to the effect that she only tried to tell Chief Scavo about so-called sexist behavior. It is undisputed that Chief Scavo received three separate write-ups and reprimands concerning this probationary officer. Scandora herself has admitted herself that she did not place Chief Scavo on notice of any protected activity and also admits that she has no evidence or information which would show that Chief Scavo did not honestly believe that she violated general order 02-002-0011 (See paragraph 46 of Defendants' 56.1(a) statement). Similarly, she is unable to identify any evidence, documents, information or other materials which would show that Chief Scavo did not honestly believe that she had asked Mr. Corter to assist her in booking a prisoner (See paragraph

4

48 of Defendants' Rule 56.1(a) statement). Because Chief Scavo's conduct falls within clearly established legal norms, he is entitled to qualified immunity.

### III. SCANDORA OFFERS NO EVIDENCE WHICH WOULD ESTABLISH THE ELEMENT OF DISCRIMINATORY INTENT.

It is well settled that a plaintiff must show that the decision maker acted with a discriminatory purpose in order to establish a violation of equal protection. McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 756 (1987). A discriminatory purpose implies more than an intent as to awareness of consequences. It implies that the decision maker selected or reaffirmed a particular course of action at least in part "because of" adverse effect upon an identifiable group. Chavez v. Illinois State Police, 251 F.3d 612, 645 (7th Cir.2001). A person bringing an action under the equal protection clause may not merely show that he was treated unfairly as an individual but is the invidious classification of a person aggrieved by the state's action. Shango v. Jurich, 681 F.2d 1091, 1104 (7th Cir.1982).

At this juncture, Scandora cannot simply rest on her pleadings, but must instead offer evidence which would permit a trier of fact to find that Chief Scavo intentionally discriminated against her. Scandora's "evidence" falls far short of the mark. She argues that "it is undisputed that Scandora never violated the order precluding a police officer from having copies of files and tapes". Scandora argues semantics rather than law and fact. General Order 02-0202-0011 requires officers to request tapes and files from the Chief – not civilian employees or fellow officers. Scandora admits that she was aware of the rule but nevertheless did not ask Chief Scavo if she could obtain copies of the tapes and files in question (See paragraph 52 of Defendants' 56.1(a) statement). Moreover, Scandora argues that she should not have been fired because she never had possession of

the tapes and/or files. Scandora was fired because she asked for tapes, files and materials from two civilian employees as well as Officer Rinella. The rule clearly states that such request must be submitted to the Chief, not co-employees (See general order #02-002-0011 attached hereto as Exhibit B).

Scandora goes on to argue that "it is undisputed that she never had files or tapes and "no male employee has ever been written up or disciplined for asking whether or not they were permitted access to certain materials". Scandora was never written up for asking co-workers whether or not they were permitted access to certain materials. She was written up for specifically asking civilian employees and Officer Rinella to provide them with files, audiotapes and an accident report. She never obtained copies of the tapes of files because unlike Scandora, her co-workers, including Arellano, Williams and Officer Rinella, complied with the general order and did not tender the materials to her.

Scandora is also guilty of assuming facts not in evidence. She actually assumes that male employees violated the provision in question. Despite access to numerous employee files subpoenaed from the United States Attorneys' Office, Scandora is unable to identify any male officer who violated this provision and was not disciplined. The fact that her co-workers followed the rules and prevented her from violating general order is of no moment.

Without citing to any evidentiary materials, Scandora maintains that Scavo was "well aware that the charge of violating the chain of command was 'pretextual'". Her failure to do so is telling inasmuch as a plaintiff has the burden of showing that the stated reason for adverse employment action was pretextual.

She then engages into a lengthy, self-serving discourse as to what the chain of command is, means, and how it operates between "officers and their superiors" (See page 5 of Plaintiff's response). She further claims that "Scavo himself admits that communications at Melrose Park did not follow this chain of command and had an 'open door policy' where any male officer would speak to him about anything they wished at any time". Strangely, Scandora neglects to support these sweeping assertions with any citation to her statement of additional facts. More important, if we accept this assertion as true, why didn't Scandora take advantage of this "open door policy" and ask the chief to provide her with these materials? During her deposition, she admitted that nothing prevented her from walking into the Chief's office and asking him to provide the materials (See paragraph 53 of Defendants' statement of facts). The same can be said of her claim that "other command personnel acknowledged that at Melrose, 'chain of command' was, at best, loosely applied". What Scandora cannot accept or dispute is that general order number 02-002-0011 establishes a procedure which Scandora and her fellow officers were to use when requesting copies of files and tapes. Scandora produces no evidence which even remotely suggests that general order number 02-002-0011 was "at best, loosely applied". Scandora violated that procedure not once, not twice, but three times.

Instead of offering evidence which suggests that Chief Scavo enforced this provision unfairly or in a discriminatory manner, Scandora further confuses the issue by claiming that "the only communication which would have been covered by the chain of command concept was Scandora's meeting with the chief concerning DiMaio's sexist

7

comments". If there is evidentiary support for this assertion in the record, it is not disclosed in Scandora's papers or in her statement of additional facts.

Scandora then argues that she adhered to the chain of command by first complaining to Lieutenant Potamianos, whom she claims told her that she could express those complaints to Chief Scavo. Scandora then directs the court and the parties to pages 36-37 of Lieutenant Potamianos' testimony. A review of that testimony shows that it has nothing to do with either the chain of command or "DiMaio's sexist comments".

Not content to misrepresent the record and the evidence, Scandora chooses to burden the parties and the court with meaningless semantics. She contends that the reasons cited by Chief Scavo in his termination memo - insubordination and disrespect for her superior - contradict the reasons provided by the Village in its answers to interrogatories. Any honest observer would agree that repeatedly violating a general order would constitute insubordination and disrespect. Any conflict that exists between the reasons given by Scavo and the reasons identified in the interrogatory answers amounts to a distinction without a difference.

For reasons known only to Scandora and her counsel, she attempts to show intent by asking the court to "consider Scavo's treatment of male probationary officers" and then gratuitously claims that they committed transgressions of "obviously greater severity". Scandora offers neither evidence nor authority which would suggest that the transgressions she attributes to the officers were "of obviously greater severity". This assertion amounts to a conclusory statement that is not based on specific facts and will not permit Scandora to avoid summary judgment (See Lucas v. Chicago Transit Authority, 367 F.3d 714, 726 (7th Cir.2001); Albiero v. City of Kankakee, 246 F.3d 927,

933 (7th Cir.2001). As was demonstrated in the Village's brief, neither Officer Negron nor the other probationary officers were similarly situated.

To succeed in her claim, Scandora must show that Scavo singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse on the identifiable group. Shango, 681 F.2d at 1104. Rather than address the issue of intent, Scandora submits a litany of assertions, none of which is supported by any citation to the record. She argues "in the case of Scandora, it is undisputed that no one, including Scavo, had any criticism of her work as a police officer". Scandora's concept of what constitutes "her work as a police officer" is at best limited and self-serving. Scandora's probationary term was set to end in August of 2004 (See paragraph 13 of Vito Scavo's affidavit attached hereto as Exhibit C). As a police officer, she was obligated to comply with the department's rules, regulations, and general orders. During an 8-month period, she was written up on four separate occasions. Accordingly, Scandora cannot credibly claim that "no one had any criticism of her work as a police officer". More important, Scandora neglects to explain what, if anything, this unsupported assertion has to do with the issue of intent.

Not surprisingly, Scandora concludes this portion of her argument with a series of statements which find so support in the record. Her musings as to what "Sergeant DiMaio would or not be able to do" are not evidence. Moreover, Plaintiff has not sued Sergeant DiMaio, nor has she pled a conspiracy claim. It follows then that Sergeant DiMaio's alleged intent to "write her up for silly reasons" is nothing more than irrelevant speculation, especially since DiMaio's alleged intent may not be imputed to Scavo. While Scandora implies that DiMaio wished to terminate her, she fails to produce

9

evidence which shows that he had any involvement in the decision or otherwise attempted to influence Chief Scavo. Her inability to do so is understandable inasmuch as the evidence establishes otherwise (See page 166 of DiMaio's deposition testimony attached hereto as Exhibit D). Incredibly, she maintains "it is clear that if they did not terminate her at that time and she made it to the other shift, she would make it past her probationary term". While it may be clear to Scandora, it is certainly not clear to the defendants or this court. Scandora's speculation that she "could make it past her probationary term" is, at best, wishful thinking, at worst, speculation.

In keeping with her practice of making assertions or allegations that are unsupported by evidentiary materials, Scandora argues "it is useful to know all the varying stories and reasons Scavo gave in his deposition" but then neglects to identify these "varying stories and reasons". She likewise fails to explain how these "varying stories and reasons" can constitute evidence of intent for purposes of her Section 1983 claim. She concludes this portion of the response by maintaining that Scavo's testimony and that of Scandora is "repeatedly in conflict and presents classic questions of credibility". The testimony in question is not identified in the response and thus both the court and Defendants are again left to guess as to what testimony is in conflict, whether it is relevant on the issue of intent, and whether the "classic questions of credibility" have any application to this particular issue.

Scandora concludes her opposition with a heavy dose of innuendo. Exactly what Sergeant DiMaio's counseling for "anger management" has to do with the issue of Vito Scavo's intent is not explained. As for Defendants' "suggestion", this assertion, like so

much of what is contained in the response, is again unsupported by deposition testimony, affidavit or other evidentiary material.

### IV. SCANDORA'S EQUAL PROTECTION CLAIM MUST FAIL BECAUSE SHE IS UNABLE TO IDENTIFY ANY INDIVIDUAL OR INDIVIDUALS WHO WERE (1) SIMILARLY SITUATED AND (2) WERE TREATED DIFFERENTLY BY CHIEF SCAVO.

In the interest of brevity and to avoid repetition, Chief Scavo adopts those sections of the Village's reply brief that address Scandora's inability to identify individual or individuals who were similarly situated and treated differently.

### V. SCANDORA IS INCAPABLE OF SHOWING THAT SHE ENGAGED IN PROTECTED ACTIVITY OR WAS TREATED DIFFERENTLY BECAUSE SHE COMPLAINED ABOUT ALLEGED GENDER DISCRIMINATION/SEXIST BEHAVIOR.

As was established above, the plaintiff failed to answer Defendants' fourth request to admit facts and thus has admitted that she never placed Chief Scavo on notice of any sexist or discriminatory behavior she attributes to Sergeant DiMaio. Moreover, Scandora's own affidavit shows that she did not place Chief Scavo on notice of any such conduct. As a result, Scandora is incapable of showing that Chief Scavo discriminated against her on the basis of gender or because she engaged in protected activity.

### VI. IN VIEW OF PLAINTIFF'S FAILURE TO IDENTIFY EVIDENCE WHICH SHOWS THAT CHIEF SCAVO ENGAGED IN DISCRIMINATORY PRACTICES WITH MALICE OR RECKLESS INDIFFERENCE, SCANDORA'S REQUEST FOR PUNITIVE DAMAGES SHOULD BE DISMISSED.

Preliminarily, Scandora again ignores the fact that she failed to respond to no fewer than four requests to admit, including the fourth request which asserted her failure to advise Chief Scavo about alleged sexist behavior. As a result, Plaintiff is precluded from showing that Chief Scavo acted recklessly or indifferently to her federal protected rights. Moreover, the contents of Scandora's own affidavit (paragraphs 17-26) show that

Scavo was not on notice of any alleged discrimination or sexist behavior she attributes to Sergeant DiMaio.

Scandora does argue "the defendant does not contend that she was unaware of the requirements of the law and does not dispute for the purpose of summary judgment that Scavo was the final decision maker and policymaker for the Village". As with so much of what is contained in the plaintiff's papers, this particular assumption is not supported by admissible evidence or by a proper citation to the record. Leaving that issue aside, the fact remains that Scandora has admitted that she has no evidence, information or testimony which shows that Scavo did not honestly believe that she repeatedly violated general order 02-002-0011 (See paragraphs 36, 46, and 48 of Defendants' Rule 56.1(a) statement). Since Scandora herself is incapable of producing evidence which shows that the reasons given for her termination were untruthful, she is likewise incapable of showing the Chief Scavo acted with malice or with a reckless indifference toward her federally protected rights. As a result, Scnadora's request for punitive damages should be dismissed.

## VII.     CONCLUSION.

For the reasons stated above, Chief Scavo respectfully requests that this court enter summary judgment in his favor and dismiss the plaintiff's complaint.


　　　　　　　　　　　　　　　　　　　DOWD & DOWD, LTD.

　　　　　　　　　　　　　　　By:     /s/ Patrick J. Ruberry_____
　　　　　　　　　　　　　　　　　　　Attorney for Defendant,
　　　　　　　　　　　　　　　　　　　VITO R. SCAVO

## **CERTIFICATE OF SERVICE**

I, an attorney, state Defendant Vito Scavo's Reply in Support of His Motion for Summary Judgment was served electronically to all law firms of record via ECF on May 11, 2007.

                                                      By:    /s/ Patrick J. Ruberry _____
                                                                   Attorney for Defendant,
                                                                   VITO SCAVO

Patrick J. Ruberry
Dowd & Dowd, Ltd.
617 W. Fulton Street
Chicago, IL 60661
Tx: 312/704-4400
Fx: 312/704-4500